IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

SUZANNE LYNCH,

    Plaintiff,

v.

KLAMATH COUNTY SCHOOL DISTRICT,

    Defendant.

Case No. 1:13-cv-02028-CL

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

Suzanne Lynch ("Plaintiff") brings this suit against her former employer, the Klamath County School District ("Defendant"). Plaintiff alleges Defendant wrongfully terminated her through constructive discharge; retaliated against her for whistleblowing activities; and discriminated against her on the basis of her disability, request for leave, and status as a domestic violence victim. Currently before the Court is Defendant's motion (#14) for summary judgment against eleven of Plaintiff's thirteen claims for relief.[1] For the reasons set forth below, Defendant's motion (#14) should be GRANTED as to Plaintiff's fifth, sixth, seventh, eighth,

---

[1] Defendant does not move against Plaintiff's third claim, which alleges interference with her right to reasonable leave from employment under Or. Rev. Stat. § 659A.272, or her fourth claim, which asserts Defendant failed to reasonably accommodate her safety concerns in violation of Or. Rev. Stat. § 659A.290.

Page 1 – Report and Recommendation



ninth, tenth, eleventh, and twelfth claims and DENIED as to her first, second, and thirteenth claims.

## FACTUAL BACKGROUND

In the fall of 2007, Plaintiff started work as an elementary special education teacher at Gilchrist School within the Defendant school district. Vickers Decl. Ex. 1, at 4 (Lynch Dep. 36:14-21). In 2008, Defendant hired Plaintiff's then-husband as a short term substitute at another school. Vickers Decl. Ex. 1, at 4 (Lynch Dep. 35:22-36:4). The following year, Plaintiff's husband came to work at Gilchrist School as a floating aide. Rohny Decl. Ex. 1, at 6-7 (Lynch Dep. 36:3-4; 40:4-5). Plaintiff's husband worked as an aide in her classroom for about an hour every day. Rohny Decl. Ex. 1, at 7 (Lynch Dep. 40:14-15).

On August 7, 2012, after a night of arguing, Plaintiff's husband called the police and said Plaintiff had a loaded gun in her mouth. Vickers Decl. Ex. 1, at 7-8 (Lynch Dep. 53:17-55:13). Plaintiff testifies that this was a lie. Vickers Decl. Ex. 1, at 7-8 (Lynch Dep. 53:17-55:13). The sheriff responded and placed Plaintiff in a psychiatric ward for monitoring. Vickers Decl. Ex. 1, at 8 (Lynch Dep. 56:1-25). Plaintiff spent a week in the hospital and was released on August 14th with a note stating she was "fit to return to duty." Vickers Decl. Ex. 1, at 7 (Lynch Dep. 53:5-25); Vickers Decl. Ex. 2, at 2. While hospitalized, Plaintiff called her school principal, Kevin McDaniel, to explain her situation. Rohny Decl. Ex. 1, at 11-12 (Lynch Dep. 93:22-96:8).

Immediately after her release, on August 15th, Plaintiff secured a restraining order against her husband. Vickers Decl. Ex. 1, at 7 (Lynch Dep. 53:6-7). The next day, Plaintiff visited Principal McDaniel at the school and presented him with a copy of the restraining order. Vickers Decl. Ex. 1, at 12 (Lynch Dep. 93:4-21). Among other things, the restraining order

prohibited Plaintiff's husband from coming within 1,000 feet of Plaintiff's place of employment. Rohny Decl. Ex. 5, at 3.

Plaintiff told Principal McDaniel that she was committed to her job but could not return to work if her husband was present because she did not feel safe. Rohny Decl. Ex. 1, at 12-13 (Lynch Dep. 96:18-23; 99:17-18). She also expressed concern for the safety of her students and co-workers. She told Principal McDaniel that her husband had threatened to kill one of her disabled students and had made threats against fellow faculty members. Rohny Decl. Ex. 1, at 12, 20 (Lynch Dep. 96:18-97:14; 167:6-168:2). Principal McDaniel responded that he was not in a position to address her concerns but he would forward the issue to Mark Greif, the personnel director. Plaintiff asked Principal McDaniel to keep her apprised of the school's decision. Rohny Decl. Ex. 1, at 13 (Lynch Dep. 98:18-99:13).

Authorities delayed in serving Plaintiff's husband with the restraining order. Plaintiff estimates her husband was not served until around August 25th. Vickers Decl. Ex. 1, at 15 (Lynch Dep. 132:6-9). In the meantime, Plaintiff did not feel safe. Vickers Decl. Ex. 1, at 10 (Lynch Dep. 64:2-7). She packed up her home in La Pine, placed her belongings in the garage, and listed the house for sale. Vickers Decl. Ex. 1, at 10 (Lynch Dep. 64:18-23). On August 20th, Plaintiff went to stay with a friend in Seattle. Vickers Decl. Ex. 1, at 10 (Lynch Dep. 64:2-7).

Teachers were scheduled to return to work for the fall semester on Monday, August 27th. Rohny Decl. Ex. 1, at 14 (Lynch Dep. 102:18-19). Plaintiff's union representative, Ken Volante, testifies that, on or around August 20th, he called Mr. Greif to negotiate a leave of absence for Plaintiff. Rohny Decl. Ex. 3, at 11 (Volante Dep. 39:7-15). Mr. Greif advised Mr. Volante that the district was not interested in putting Plaintiff on leave. Rohny Decl. Ex. 3, at 7 (Volante Dep.

Page 3 – Report and Recommendation

24:22-25-6). In contrast, Mr. Greif testifies that he knew nothing about Plaintiff's interest in securing leave. Rohny Decl. Ex. 4, at 2 (Greif Dep. 21:3-7).

On or around August 21st, Plaintiff called Principal McDaniel and discussed the possibility of leave. Rohny Decl. Ex. 2, at 5 (McDaniel 24:11-25). During the conversation, she represented to Principal McDaniel that she was contemplating resignation. Rohny Decl. Ex. 2, at 9 (McDaniel Dep. 43:11-24).

On August 23rd, Mr. Volante contacted Mr. Greif and stated Plaintiff "does not intend to return to work." Vickers Decl. Ex. 1, at 24. Plaintiff explains Mr. Volante did so because Defendant had not "resolved the issue to give me a safe place to go to work." Rohny Decl. Ex. 1, at 17 (Lynch Dep. 131:16-20). He went on to list the terms of her resignation requiring negotiation. Vickers Decl. Ex. 1, at 24. Mr. Greif responded:

> We as a district value [Plaintiff's] work in our district and have no desire to have her leave our employ. Thus, there is no motivation on our part to offer incentives for a settlement. It is our expectation that [Plaintiff] will be at work on Monday per her contract. Her failure to show up to work will be grounds for potential disciplinary action.

Vickers Decl. Ex. 1, at 23. That same day, Plaintiff contacted Defendant's Payroll and Benefits Supervisor to inquire into medical and long-term disability leave options. Rohny Decl. Ex. 7, at 1. Her inquiry was forwarded to Mr. Greif on August 24th. Rohny Decl. Ex. 7, at 1.

On Friday, August 24th, Plaintiff had not heard back from the school regarding whether it would enforce her restraining order, so she called Principal McDaniel. Rohny Decl. Ex. 1, at 13-14 (Lynch Dep. 101:13-14; 102:17-23). Principal McDaniel told her that he had not yet talked to Greif. Rohny Decl. Ex. 1, at 14 (Lynch Dep. 102:21-24). Also on the 24th, Mr. Volante sent Mr. Greif another e-mail stating "We request that [Plaintiff] be released from her contract given the duress and danger she has advised me of." Vickers Decl. Ex. 1, at 23.

Page 4 – Report and Recommendation

On August 27th, Mr. Volante sent Plaintiff a text message telling her that "[l]eave is a no-go" and instructing her to send Mr. Greif an e-mail confirming her resignation so that Defendant could move forward with filling her position. Rohny Decl. Ex. 8, at 1-2. That same day, Mr. Greif responded "I will accept [Plaintiff's] resignation based on your email today, your email dated August 23th, and her verbal resignation to her principal, Kevin McDaniel on August 23rd. Her effective date of resignation will be August 27, 2012." Vickers Decl. Ex. 3, at 4.

On September 6th, Mr. Volante sent Mr. Greif an e-mail requesting that Plaintiff's resignation be converted to unpaid leave. Rohny Decl. Ex. 10. Mr. Greif denied this request because Defendant had already processed the resignation and hired a replacement. Rohny Decl. Ex. 11.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party fulfills its burden, the burden shifts to the non-moving party who must go beyond the pleadings to identify genuine issues of fact. Celotex Corp., 477 U.S. at 324. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Instead, the opposing party must, by affidavit or as otherwise provided by FED. R. CIV. P. 56, designate specific facts that show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

The court must view the evidence in the light most favorable to the nonmoving party. Szajer v. City of Los Angeles, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Life Ins. Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981). However, facts must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. Plaintiff's First and Second Claims: Whistleblower Retaliation

Oregon's whistleblower protection statute, Or. Rev. Stat. § 659A.199(1), makes it unlawful for an employer to discriminate or retaliate against an employee who has "in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." Similarly, Or. Rev. Stat. § 659A.203(1)(b) prohibits public employers from disciplining or threatening to discipline an employee for disclosing information that the employee reasonably believes is evidence of waste, abuse of authority, a violation of law, or a danger to public health and safety.

To make a prima facie case of retaliation under these statutes, a plaintiff must establish three elements: (1) she engaged in a protected activity, (2) she suffered an adverse employment

action, and (3) there is a causal link between the protected activity and adverse action. <u>Neighorn v. Quest Health Care</u>, 870 F.Supp.2d 1069, 1102 (D. Or. 2012). Here, Plaintiff presents evidence that Defendant threatened to discipline her and constructively discharged her shortly after she asked Defendant to enforce her restraining order; alerted Defendant to conduct that Plaintiff believed in good faith amounted to violations of state and/or federal law; and provided Defendant with information she reasonably believed evidenced a specific and substantial danger to herself and others within the school system.

Defendant raises two challenges to Plaintiff's statutory retaliation claims. First, it contends that it did not take an adverse action against Plaintiff. Rather, Defendant wanted to continue its employment relationship with Plaintiff and only agreed to release Plaintiff from her contract at her union representative's insistence. This summation omits key facts on the record. It is in dispute whether Defendant threatened disciplinary action against Plaintiff in response to her efforts to ensure her restraining order was enforced. The parties present conflicting accounts of the communications between Plaintiff, Plaintiffs' union representative, and Defendant's officials leading up to Greif's statement that Plaintiff's failure to return to work would "be grounds for potential disciplinary action." Vickers Decl. Ex. 1, at 23. Without a clearer understanding of the context of this statement, the Court cannot say with certainty that it was or was not related to Plaintiff's disclosures. Moreover, the parties dispute whether Defendant wrongfully terminated Plaintiff through constructive discharge. Plaintiff contends Defendant expected Plaintiff to work under intolerable conditions, leaving her with no choice but to resign. It took no action to ensure her safety despite her reports and offered no assurance that it would honor her restraining order. Defendant responds that it merely moved on Plaintiff's representation that she did not intend to return to work and granted her request to be released from her contract. A finder of fact must sort

Page 7 -- Report and Recommendation

through the jumble of communications leading up to Plaintiff's release in order to determine whose story is best supported by the evidence.

Second, Defendant argues there is no causal link between the matters reported in the restraining order and Plaintiff's release because Principal McDaniel only glanced at the restraining order and, thus, was not aware of the facts and allegations contained therein. This argument overlooks the fact that, in addition to giving McDaniel a copy of the restraining order, Plaintiff testifies she orally informed him on August 16th of her husband's threats of violence against herself, a disabled student, a classroom aide, and others within the district, including Principal McDaniel himself. Rohny Decl. Ex. 1, at 20 (Lynch Dep. 167:6-168:2). Even assuming Defendant could defeat causation by demonstrating Principal McDaniel's willful ignorance to the restraining order's contents, Plaintiff presents evidence that she put Defendant on notice through alternate means. Thus, a jury could reasonably infer Plaintiff's disclosures influenced Defendant's treatment of her.

In conclusion, the record is ripe with disputed facts regarding how Defendant responded to Plaintiffs' reports. "When the motive for a discharge is in dispute, and the evidence is subject to more than one interpretation, the resolution of the issue is properly left to the trier of fact." Hirsovescu v. Shangri-La Corp., 113 Or.App. 145, 149 (1992). Defendant's motion for summary judgment on Plaintiff's claims under Or. Rev. Stat. §§ 659A.199 and 659A.203 should be denied.

## II. Plaintiff's Fifth Through Eighth Claims: Leave Interference and Retaliation

The Family and Medical Leave Act (FMLA) and Oregon Family Leave Act (OFLA) give eligible employees of covered employers the right to protected leaves of absence from work for specified medical reasons. 29 U.S.C. § 2612(a)(1); Or. Rev. Stat. § 659A.159(1). Plaintiff alleges

Defendant violated both the FMLA and OFLA by (1) interfering with her right to take protected leave and (2) constructively discharging her in retaliation for her attempt to exercise her right to take protected leave. Because the OFLA is construed "to the extent possible in a manner that is consistent with any similar provisions of the federal" FMLA, the Court will analyze Plaintiff's FMLA and OFLA claims together. Or. Rev. Stat. § 659A.186(2).

### a. Plaintiff's Fifth and Seventh Claims: Leave Interference

"Under [29 U.S.C.] § 2615(a)(1), it is 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise' the substantive rights guaranteed by [the] FMLA ." Sanders v. City of Newport, 657 F.3d 772, 777 (9th Cir. 2011) (quoting 29 U.S.C. § 2615(a)(1)). Likewise, Or. Rev. Stat. § 659A.183(1) makes it unlawful for an employer to deny family leave that an eligible employee is entitled to take. To establish that Defendant interfered with her right to take FMLA and OFLA leave, Plaintiff must show: (1) she was eligible for FMLA and OFLA protections, (2) Defendant was covered by the FMLA and the OFLA, (3) she was entitled to leave under the FMLA and the OFLA, (4) she provided sufficient notice of her intent to take leave, and (5) Defendant denied her FMLA and OFLA benefits to which she was entitled. Sanders, 657 F.3d at 778 (citing Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006)).

Plaintiff's interference claims falter on the third prong. The FMLA provides that an eligible employee is entitled to leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Similarly, the OFLA permits employees to take leave "[t]o recover from or seek treatment for a serious health condition of the employee that renders the employee unable to perform at least one of the essential functions of the employee's regular position." Or. Rev. Stat. § 659A.159(1)(c). A

Defendant violated both the FMLA and OFLA by (1) interfering with her right to take protected leave and (2) constructively discharging her in retaliation for her attempt to exercise her right to take protected leave. Because the OFLA is construed "to the extent possible in a manner that is consistent with any similar provisions of the federal" FMLA, the Court will analyze Plaintiff's FMLA and OFLA claims together. Or. Rev. Stat. § 659A.186(2).

### a. Plaintiff's Fifth and Seventh Claims: Leave Interference

"Under [29 U.S.C.] § 2615(a)(1), it is 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise' the substantive rights guaranteed by [the] FMLA ." Sanders v. City of Newport, 657 F.3d 772, 777 (9th Cir. 2011) (quoting 29 U.S.C. § 2615(a)(1)). Likewise, Or. Rev. Stat. § 659A.183(1) makes it unlawful for an employer to deny family leave that an eligible employee is entitled to take. To establish that Defendant interfered with her right to take FMLA and OFLA leave, Plaintiff must show: (1) she was eligible for FMLA and OFLA protections, (2) Defendant was covered by the FMLA and the OFLA, (3) she was entitled to leave under the FMLA and the OFLA, (4) she provided sufficient notice of her intent to take leave, and (5) Defendant denied her FMLA and OFLA benefits to which she was entitled. Sanders, 657 F.3d at 778 (citing Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006)).

Plaintiff's interference claims falter on the third prong. The FMLA provides that an eligible employee is entitled to leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Similarly, the OFLA permits employees to take leave "[t]o recover from or seek treatment for a serious health condition of the employee that renders the employee unable to perform at least one of the essential functions of the employee's regular position." Or. Rev. Stat. § 659A.159(1)(c). A

"serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). In her Complaint, Plaintiff alleges that her "fear for her life and for others" qualified as a "serious health condition." Compl. ¶ 55. In her response to Defendant's summary judgment motion, she also identifies her longstanding battles with depression and Gulf War Syndrome. Pl.'s Resp., at 16. However, regardless of whether Plaintiff's distress and afflictions qualify as "serious health conditions," her FMLA and OFLA claims fail because she has not presented evidence to establish the second component of the "serious health condition" leave entitlement. There is no basis on the record to conclude that Plaintiff's health rendered her unable to perform her professional duties. 29 U.S.C. § 2612(a)(1)(D); Or. Rev. Stat. § 659A.159(1)(c). Plaintiff has not established that leave was medically necessary.

FMLA regulations define an employee as "unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position." 29 C.F.R. § 825.123(a). The OFLA mirrors this definition. Or. Rev. Stat. § 659A.159(1)(c). An employee "who must be absent from work to receive medical treatment for a serious health condition" is automatically considered unable to perform her essential job functions during that absence. 29 C.F.R. § 825.123(a); see also Ridings v. Riverside Med. Ctr., 537 F.3d 755, 770 (7th Cir. 2008) ("[B]ecause the employee had not demonstrated that he was receiving treatment that rendered him unable to work on those three days, he did not demonstrate FMLA entitlement.").

Plaintiff was discharged from the psychiatric ward on August 14th. Plaintiff testifies she was held in the ward because of her husband's deception, not because she had a condition

requiring medical attention. A physician noted that, as of her release, Plaintiff was "fit to return to duty." Vickers Decl. Ex. 2, at 2. There are no other medical opinions on the record. See Washington v. Fort James Operating Co., 110 F.Supp.2d 1325, 1333 (D. Or. 2000) ("The court and the employer should defer to the health care provider's determination of whether a condition qualifies."). Nor is there any evidence to suggest that Plaintiff's health precluded her from performing her job functions when she requested leave. The record does not indicate that Plaintiff sought out medical attention or planned to undergo medical treatment during her proposed absence.

While a jury could reasonably conclude that Plaintiff's situation made it very difficult for her to work, the record does not support the conclusion that this was due to a serious health condition. Rather, Plaintiff presents evidence that she could not return to the school because Defendant failed to offer her basic assurances that it would keep her safe and honor her restraining order. Defendant's apparent inaction, while regrettable, did not entitle Plaintiff to medical leave. Because there is no evidence that Plaintiff was incapacitated by a serious health condition, the Court should grant Defendant's motion for summary judgment on Plaintiff's FMLA and OFLA interference claims.

### b. Plaintiff's Sixth and Eighth Claims: Leave Retaliation

Plaintiff also brings retaliation claims under the FMLA and OFLA. She alleges Defendant constructively discharged her by maintaining harmful working conditions in retaliation for her good faith request for medical leave. Compl. ¶ 60. To establish a prima facie retaliation claim, Plaintiff must show: (1) she availed herself of a protected right under the FMLA and OFLA, (2) she was adversely affected by an employment decision, and (3) there is a

Page 11 – Report and Recommendation

causal connection between the two actions. Washington, 110 F.Supp.2d at 1330 (citing Morgan v. Hilti, 108 F.3d 1319, 1325 (10th Cir. 1997)).

The record does not support Plaintiff's retaliation claims. First of all, it is unclear whether Plaintiff engaged in a statutorily protected activity under the FMLA and OFLA. Can Plaintiff establish that she availed herself of a protected right under the FMLA and OFLA if she has not demonstrated that she was entitled to FMLA or OFLA leave in the first place?[2] The Court need not confront this thorny issue because, regardless of whether Plaintiff was engaged in a protected activity, her retaliation claims fail. Plaintiff has not produced evidence that her release was causally connected to her attempt to secure FMLA and/or OFLA leave. See Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 887 (9th Cir. 2004) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)) ("The plaintiff must present 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'"). Defendant's inaction, which Plaintiff asserts compelled her resignation, began days before Plaintiff inquired into her leave options. There is no evidence that Defendant's treatment of Plaintiff changed after Plaintiff or her union representative raised the issue of leave for the first time. Defendant merely continued to sideline Plaintiff's concerns. Thus, there is no evidence that Defendant was motivated, in whole or part, to constructively discharge Plaintiff because of her activities or requests under the FMLA/OFLA. The timing of events does not support the

---

[2] It appears that this is an open question in the Ninth Circuit. The only District of Oregon opinion directly on point, Landendorff v. Intel Corp., was vacated pursuant to the parties' stipulation on appeal. No. CIV. 02-6259-AS, 2004 WL 5843109, at *1 (D. Or. Mar. 19, 2004), vacated (Apr. 13, 2005). However, many federal courts to confront this issue have held that an employee can only invoke the protection of the FMLA if she is eligible for and entitled to leave under the Act. Sparks v. Sunshine Mills, Inc., 580 F.App'x 759, 766 (11th Cir. 2014) ("In order to receive FMLA protections, an employee must be both eligible, meaning having worked the requisite hours, and entitled to leave, meaning an employee has experienced a triggering event."); Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1017 (8th Cir. 2013) (finding the district court erred in denying the defendant's motion to dismiss because the plaintiff "failed to plead notice of intent to take FMLA leave, and that she was qualified for that leave" and, thus, did not sufficiently allege that she exercised FMLA rights); Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000) (the plaintiff did not prove that she was exercising a protected right because the medical leave she took "was not under the auspices of the FMLA").

Page 12 – Report and Recommendation

conclusion that Defendant's failure to act was fueled by animus toward Plaintiff's medical leave requests. Results cannot precede their cause. Accordingly, Defendant's motion for summary judgment on Plaintiff's state and federal leave retaliation claims should be granted.

## III. Plaintiff's Ninth and Tenth Claims: Disability Discrimination

Plaintiff alleges Defendant discriminated against her because of her disability in violation of the Americans with Disabilities Act (ADA) and corresponding Oregon law. Specifically, she claims Defendant constructively discharged her by failing to reasonably accommodate her limitations. Compl. ¶¶ 82, 84.

The ADA prohibits employers, like Defendant, from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Among the discriminatory actions prohibited by the ADA is an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5). The ADA defines "reasonable accommodation" as follows:

> The term "reasonable accommodation" may include — (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

Page 13 – Report and Recommendation

42 U.S.C. § 12111(9).

Similarly, Or. Rev. Stat. § 659A.112(1) makes it unlawful for "any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability." Oregon's statute prohibiting disability discrimination is "construed to the extent possible in a manner that is consistent with any similar provisions of the [ADA]." Or. Rev. Stat. § 659A.139(1). Accordingly, the Court will consider Plaintiff's state and federal disability claims together.

To make a prima facie case under the ADA, Plaintiff must establish: "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003)). For the purposes of this motion, Defendant does not dispute that it knew Plaintiff struggled with depression and Gulf War Syndrome. Def.'s Mot. at 13. Nor does it challenge whether these conditions qualify as disabilities under the ADA. There is no dispute that constructive discharge through failure to accommodate can amount to an adverse employment action. The issue is causation: whether Plaintiff suffered an adverse employment action *because of* her disabilities.

Like her medical leave retaliation claims, Plaintiff's disability discrimination claims fail because she has not presented evidence that Defendant's actions were "motivated, even in part, by animus based on [her] disability or request for an accommodation." Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1065 (9th Cir. 2005). The record does not support a causal link

Page 14 – Report and Recommendation

between Plaintiff's longstanding mental health conditions, Plaintiff's request for leave, and her alleged constructive discharge. Plaintiff alleges she first requested leave on August 20th, days after Defendant's complained-of conduct had commenced. This timing does not support Plaintiff's contention that Defendant's inaction, which eventually drove her to resign, was caused by her request for leave. Nor is there any evidence that Plaintiff requested leave to accommodate her disabilities. Instead, the record overwhelmingly suggests that Plaintiff sought leave because she did not feel safe working with her estranged husband. See Jackson v. J. Lewis Crozer Library, 445 F.App'x 533, 536 (3d Cir. 2011) (upholding the district court's conclusion that the plaintiff did not seek an ADA-protected accommodation where "ample evidence" indicated the plaintiff "sought to alter the terms of the full-time position because of her son's homeschooling, not her disability."). Moreover, the record does not support the conclusion that Plaintiff was constructively discharged because of her disabilities. The parties agree that Defendant had long been aware that Plaintiff struggled with depression and Gulf War Syndrome. There is no evidence that Defendant harbored animus toward Plaintiff because of these conditions. Nor is there any evidence that these conditions were implicated in Plaintiff's restraining order or dealings with Defendant. In the absence of a triable issue of fact regarding whether Defendant discriminated against Plaintiff on the basis of her disabilities, summary judgment should be granted.

## IV.  Plaintiff's Eleventh and Twelfth Claims: Wrongful Discharge[3]

In Oregon, the tort of wrongful termination serves as a narrow exception to the at-will employment doctrine. Draper v. Astoria Sch. Dist. No. 1C, 995 F.Supp. 1122, 1127 (D.Or. 1998) (citing Walsh v. Consol. Freightways, Inc., 278 Or. 347, 351–52 (1977)), abrogated in part on

---

[3] Plaintiff's eleventh claim is for wrongful discharge while her twelfth claim is for constructive discharge. The Court reads these two claims together. See McGanty v. Staudenraus, 321 Or. 532, 556 (1995) (explaining a tort of wrongful discharge can involve a constructive discharge).

Page 15 – Report and Recommendation

other grounds by Rabkin v. Or. Health Scis. Univ., 350 F.3d 967 (9th Cir. 2003). It is a not a tort of general application. Instead, it is "designed to fill a remedial gap where a discharge in violation of public policy would be left unvindicated." Olsen v. Deschutes Cnty., 204 Or.App. 7, 14 (2006) (quoting Dunwoody v. Handskill Corp., 185 Or.App. 605, 612 (2003)). "If existing remedies adequately protect the employment related right . . . the Oregon Supreme Court has usually chosen not to recognize an additional common law remedy of wrongful discharge." Carlson v. Crater Lake Lumber Co., 103 Or.App. 190, 193 (1990). The Oregon Court of Appeals has allowed wrongful discharge claims to proceed despite a statutory remedy if the legislature clearly did not intend to preclude common law remedies. Olsen, 204 Or.App. at 14. However, courts in the District of Oregon have generally rejected the Court of Appeals' approach as "inconsistent with Oregon Supreme Court precedent and an unnecessary expansion of the tort of wrongful discharge." Neighorn, 870 F.Supp.2d at 1106; see also Shapiro v. Am. Bank [FSB], No. 3:12-CV-1358-AC, 2013 WL 6157266, at *8 (D. Or. Nov. 21, 2013) ("[I]n this District, a wrongful discharge claim is precluded upon a finding by the court that an adequate statutory remedy exists, regardless of the likelihood of success on the merits, statutory language or legislative intent"); but see Krouse v. Ply Gem Pac. Windows Corp., 803 F.Supp.2d 1220, 1229 (D. Or. 2011).

Plaintiff's wrongful discharge claim is based on the same conduct for which she is seeking statutory remedies. In Neighorn, 870 F.Supp.2d at 1107, this Court held Or. Rev. Stat. § 659A.199, under which Plaintiff brings her claim for whistleblower retaliation, "provides an adequate (if not better) remedy than a wrongful discharge claim." (Internal citations omitted). Because the court denied the defendant's motion for summary judgment on the plaintiff's whistleblower retaliation claim, it found the plaintiff's wrongful discharge claim was precluded.

Page 16 – Report and Recommendation

Id. at 1106-07. Similarly, here, the Court recommends that Plaintiff's whistleblower retaliation claim proceed to trial. There is no evidence that the statute does not afford Plaintiff an adequate remedy.[4] It follows that the Court should dismiss Plaintiff's common law wrongful discharge claim as superseded. Defendant's motion for summary judgment on Plaintiff's wrongful discharge claim should be granted.

### V. Plaintiff's Thirteenth Claim: Intentional Infliction of Emotional Distress

Defendant does not present any evidence or argumentation in support of its motion for summary judgment against Plaintiff's claim of intentional infliction of emotional distress (IIED). Instead, Defendant notes "Plaintiff's counsel advised during the conferral process that she is willing to dismiss this claim." Def.'s Mot., at 15. Plaintiff neither confirms nor denies this assertion. Nor does her responsive briefing address her IIED claim. Because Defendant has not attempted to meet its burden of demonstrating the absence of a genuine factual issue for trial; Devereaux, 263 F.3d at 1076; and Plaintiff has not sought leave to eliminate its IIED claim; FED. R. CIV. P. 15(a)(2); the Court should refrain from ruling on Plaintiff's IIED claim as a matter of law.

### RECOMMENDATION

For the aforementioned reasons, Defendant's motion (#14) for partial summary judgment should be GRANTED as to Plaintiff's fifth (FMLA interference), sixth (FMLA retaliation), seventh (OFLA interference), eighth (OFLA retaliation), ninth (disability discrimination), tenth (disability discrimination), eleventh (wrongful discharge), and twelfth (constructive discharge)

---

[4] Plaintiff points out that Or. Rev. Stat. § 659A.199(2) clearly provides "[t]he remedies provided by this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section." However, as explained above, courts in this District have held that "[n]either the plain language of the statute nor the legislative history are relevant to the court's analysis here." Shapiro, 2013 WL 6157266, at *8.

claims and DENIED as to her first (whistleblower retaliation), second (public employee whistleblower retaliation), and thirteenth (IIED) claims.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. See FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this 6 day of April 2015.

_____
MARK D. CLARKE
United States Magistrate Judge